UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 2:10-CR-109-RLH-PAL |
| ) | |
| vs. ) | **O R D E R** |
| ) | (Motion to Reconsider–#66) |
| JENNA DEPUE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Before the Court is the United States' Motion to Reconsider Response to Remand and Order (#66, filed January 18, 2013). For reasons admitted to by the Government, the Court does not anticipate a response from DePue's counsel.

The United States seeks reconsideration of this Court's Response to Remand and Order (#64, filed January 10, 2013), filed in response to the Circuit's Order of Remand of December 12, 2012, in Case No. 12-10289, DktEntry:6, remanding "for further proceedings."

The Motions are based on Federal Rules of Criminal Procedure 51(b) or, alternatively, 35(a)(c). These Rules only authorize modifications of sentences. They do little to establish grounds for doing so here.

Although not mentioned in any of the Federal Rules of Civil Procedure, motions for reconsideration may be brought under both Rules 59(e) and 60(b). "Under Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

1

Under Rule 60(b), a court may relieve a party from a final judgment, order or proceeding only for: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief from the judgment.  A motion for reconsideration is properly denied when it presents no arguments that were not already raised in its original motion.  *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

Motions for reconsideration are not "the proper vehicles for rehashing old arguments," *Resolution Trust Corp. v. Holmes*, 846 F.Supp. 1310, 1316 (S.D.Tex. 1994)(footnotes omitted), and are not "intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F.Supp. 879, 889 (E.D. Va. 1977).

The Motion for Reconsideration will be denied.  It is merely a rehashing of prior arguments in an attempt to convince this Court to change its mind.  This subsequent rendition is no more convincing than the first (made at the time of sentencing) or the second (made in the motion to reconsider following sentencing).  However, because the Motion appears to be calculated not to change the mind of the District Judge, but to convince the Circuit Judges that I mischaracterized the facts and the evidence in my Response and Order, I feel compelled to clarify some of the arguments made in this most recent attempt:

I. **ARGUMENT THAT DEPUE'S ACTIONS AND FAILURE TO OPPOSE WERE NOT THE RESULT OF GOVERNMENT INTIMIDATION**

Using a footnote (#5) on page 15, which argues that DePue and her counsel could not have been afraid of "dire consequences" if they violated the appeal waiver, because other defendants in other cases had opposed remand motions without consequences (with no indication of how DePue or her counsel would have known that), the United States, in the text of the Motion, admits that it told defense counsel that if he opposed it, the Government would seek the entire $1,060,000 in forfeiture, rather than the $76,667.  A reasonable person would consider that a veiled, if not a blatant, threat.  Perhaps a different version than assumed by this Court, but a threat nonetheless, which had its desired

2

effect of dissuading any opposition.

## II.     INACCURACY OF "ADMISSIONS" IN PLEA AGREEMENT

The United States again quotes extensively from the "Facts" language of the Plea Agreement in its efforts to show what Jenna DePue did and what her intent was, arguing that her testimony at trial was "self-serving." The Court reminds the United States that her testimony was adduced by the Government itself, was consistent throughout both trials, its credibility and authenticity was argued vociferously by the Government in closing argument in both trials, and was corroborated by the testimony of all the other witnesses at both trials. The Government's insistence on relying on the statements it prepared for the Plea Agreement, and ignoring the totality of the evidence it presented during two trials, where witnesses were placed under oath and questioned by both sides, is shortsighted.

The Plea Agreement does state she recruited straw buyers, plural. Her testimony, which was confirmed by her sister and the rest of her family, was that she only recruited one, her sister, with whom she owned a home in Arizona.

The Government argues that she gave false information to two entities, Mauzzy Management Company and Weichey Orthodontics, when they called to verify employment of the straw buyers. There is no such statement in the Plea Agreement. Furthermore, her testimony was that she only responded to calls regarding one company, Mauzzy Management, not for Weichey Orthodontics as well. Assuming that happened, the testimony of others indicated that the cell phone used for that purpose was soon given to others to field those calls to confirm employment. There were many cell phones. They were primarily used by those actually involved in the scheme. Her testimony only verified that her brother, Brett DePue told her he was using those companies for his business model. With regard to her intent to defraud, note the following testimony:

> Assistant U.S. Attorney (AUSA).     How do you know that?
> Depue:            Because Brett Depue asked me to, umm, answer – if people called a certain cell phone for the Mauzzy Management company, he asked me to approve – they would be calling and say does so and so work at this company and I was told to say yes.

```
* * * *
AUSA:    Did anyone work for Mauzzy Management?
DePue:   No.
AUSA:    Did Brett DePue tell you why he wanted you to answer the phone on
         behalf of Mauzzy Management?
DePue:   He said, I need you to answer the phone to say that people work at this
         company and said – and I questioned, I said, I don't think that's a – why
         would I be doing that? And he said, It's okay because everybody does
         this. It's okay, it's not a big deal, you can say they work there.
AUSA:    Did he tell you whether it was related to loans?
DePue:   Yes.
AUSA:    And what did he say about that?
DePue:   He said this is part of – the loan officer needs to – needs to put on the
         paperwork that they're making so much money and so we need you to
         say that yes, they work at this company so that she can put a certain
         amount on the loan documents.
* * * *
AUSA:    Why did you agree to do it?
DePue:   Because I thought that Brett DePue was – he's my brother, he's a good
         – he had been a – so far had been a good person for the most part and I
         just never thought it would be that – it was really that illegal, I never
         thought about it.
```

As pointed out in the Response to Remand and Order, Jenna DePue was intimidated by her brother. She did not want to move to Las Vegas to work for him. She did not want to stay while there. And, after she returned home to Arizona, she did not want to return, but she did. After things fell apart for Brett, she did not want to let him and his family move into her apartment where she had to support them, and she did not want him to stay, after she demanded he move out. But he appealed to her family loyalty and threatened her with the loss of her money if she did not do as he demanded. She did not have the fortitude to deny him and so, when he would not move out, she had to leave her own apartment–though still obligated on the rent–and find another place of residence. She had no intent to defraud anyone. She obviously did it because of her brother's influence.

The Government also argues that she "caused false information to be included on straw buyers' loan applications." Her testimony was that she did not. All she did was sign one or two blank loan applications at the insistence of her brother. She did not fill out any of the information placed on those applications. And, her signature was forged on other applications that she knew nothing about until she discovered it later.

4

The Government argues that she "caused the loan applications to be forwarded to financial institutions." If the Government means by that, that she placed them in the mails, it may be true. She was responsible to mailing some things. But she did not "cause" applications to be forwarded in the sense argued by the United States.

### III. JENNA DEPUE DID NOT JOIN A CONSPIRACY

On page 13, of its Motion, the United States, quoting *Smith v. United States*, __U.S. ___, 2013 WL 85299 *6 (slip op. January 09, 2013), accuses Jenna DePue as follows: "[W]hen Depue 'joined forces to achieve collectively more evil that [s]he could accomplish alone,' she 'tied [her] fate to that of the group,' and the law 'punish[es her] for the havoc wreaked by the unlawful scheme, whether or not' she was involved in all aspects of the conspiracy." The Government misses the point. I refer it, and any other reader, to the Jury Instructions on the law quoted in my Response to Remand and Order.

Jenna DePue did not plead guilty to wire fraud or mail fraud. She pled guilty to Conspiracy. To be found guilty of conspiracy to commit those crimes, it must be proven that she "became a member of an agreement to commit a crime and intending to help accomplish it." It is not enough that Brett DePue discussed with her matters of interest to him, or that she acted in ways to help him, "One becomes a member of a conspiracy by *wilfully* participating in the unlawful plan with the *intent* to advance or further some object or purpose of the conspiracy. . . ." "On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exits." *See Ninth Circuit Model Jury Instruction* 8.20. Furthermore, *Model Jury Instruction* 8.23 requires the government to prove that Jenna DePue had reason to believe that whatever benefits she might get from the conspiracy were probably dependent upon the success of the entire venture. She was to be paid her salary–which is what the Government wants her to forfeit--regardless of the success of any conspiracy. She may have known that what her

brother wanted her to do was wrong, and that HE would benefit from her doing so, that does not establish there was a conspiracy or that she "intended" to join it.

Based upon the foregoing, together with this Court's prior Response to Remand and Order (#64),

IT IS HEREBY ORDERED that the United States' Motion to Reconsider Response to Remand and Order (#66) is DENIED.

Dated: January 28, 2013.

_____
**Roger L. Hunt
United States District Judge**